# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 19-2103-M
a black and red Verizon wireless iPhone recovered )
from LEROY GRAY ("TARGET CELLPHONE") )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Pennsylvania_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |
| 18 U.S.C. §§ 922(g) | Firearms Possession |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Ryan Jones (FBI)
Printed name and title

Sworn to before me and signed in my presence.

Date: 12-17-19

_____
Judge's signature

City and state: Philadelphia, Pennsylvania

Hon. Thomas J. Rueter, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT

1. I, Ryan Jones, am a Special Agent with the United States Department of Justice, Federal Bureau of Investigation ("FBI") and have been so employed for over nine years. I am currently assigned to a specialized enforcement group, the Philadelphia FBI Violent Crimes Task Force, whose primary mission is to investigate those individuals and groups that violate the federal firearms and narcotics statutes. During my tenure as an agent, I have participated in and personally conducted investigations involving violations of federal law and have been the affiant in the execution of several search warrants.

2. The information contained in this affidavit is based upon my personal observations and investigation, information relayed to me by other special agents and/or other law enforcement agents, as well as official reports of law enforcement. Because this affidavit is being submitted for the limited purpose of securing authorization to search a cellular telephone, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to search the cellular telephone recovered from the defendant Leroy Gray ("GRAY") recovered incident to his arrest and during a search warrant executed at GRAY'S residence on May 16, 2019: a black and red Verizon wireless iPhone ("TARGET CELLPHONE").

3. This affidavit requests authorization to search the TARGET CELLPHONE listed in Attachment A and the extraction from that property of electronically stored information as described in Attachment B.

### PROBABLE CAUSE

4. In or about January 2019, members of the FBI initiated an investigation into GRAY a/k/a "Scrap," for the illegal distribution of narcotics and methamphetamine in

Philadelphia. The investigation was predicated primarily on information provided a confidential informant/source ("CI"), as well as physical surveillance by law enforcement, controlled drug purchases and recorded phone conversations between GRAY and the informant. CI is a registered FBI informant. CI has cooperated with investigators and has provided reliable and accurate information, which has led to several successful federal investigations. CI has, in the past, made statements against his/her own penal interest. The information provided by CI in connection with the current investigation has been corroborated by law enforcement surveillance, local PPD police reports, Pennsylvania Department of Motor Vehicle records and law enforcement databases. During the course of the investigation into GRAY, CI also participated in several controlled purchases of methamphetamine from GRAY's co-defendant, Gregory Graham-Perez a/k/a "Q" ("GRAHAM-PEREZ").

5. By way of background, in January 2019, CI spoke with GRAY over cellular phone and they discussed the purchase of a pound of methamphetamine. During their conversation, which was recorded by the FBI, GRAY quoted the price of a pound of methamphetamine for $4,200. No sale was ever consummated between GRAY and CI; however, in April 2019, CI spoke with GRAY again over his cellular phone. Again, they engaged in a discussion about CI purchasing methamphetamine. The defendant provided CI with a phone number for GRAHAM-PEREZ so that CI could arrange to purchase methamphetamine from him in Philadelphia. On April 24, 2019, CI received a 2-gram sample of methamphetamine from GRAHAM-PEREZ. On April 26, 2019, CI purchased approximately 120 grams of methamphetamine from GRAHAM-PEREZ. On May 8, 2019, CI purchased approximately 120 grams of methamphetamine from GRAHAM-PEREZ. On May 15, 2019, CI purchased approximately 116 grams of methamphetamine from GRAHAM-PEREZ. On May 16, 2019, CI

set up a buy to purchase approximately 340 grams of methamphetamine from GRAHAM-PEREZ, but, as the exchange occurred, FBI agents intervened and arrested GRAHAM-PEREZ following a brief foot-chase through traffic.

6. Surveillance conducted by the FBI revealed that on two occasions, GRAY accompanied GRAHAM-PEREZ to the transactions with CI and that GRAHAM-PEREZ picked up GRAY from his house shortly before the methamphetamine sales occurred. Based upon their surveillance, FBI agents concluded that GRAY was the source of supply for the methamphetamine that GRAHAM-PEREZ was selling to CI. These transactions were captured on video and audio recordings and the FBI recorded videos of GRAHAM-PEREZ dropping off GRAY at his house a short time after one of the methamphetamine sales to CI.

7. On May 16, 2019, FBI agents executed a search warrant at GRAY'S house located at 4829 North 9th Street, Philadelphia, Pennsylvania. GRAY was apprehended exiting the basement door of the house. Recovered from his person was a pill bottle containing 35 pills of oxycodone and $380. Inside the residence, in a trap in the ceiling of the basement was over 500 grams of methamphetamine, over 500 grams of cocaine, 40 grams of heroin, an Atak Arms .38 caliber revolver with an obliterated serial number, as well as a stolen, loaded Smith and Wesson .40 caliber pistol. Also recovered was a digital scale, the TARGET CELLPHONE, letters in the defendant's name addressed to him at 4829 North 9th Street, as well as $750.

8. On July 10, 2019, GRAY and GRAHAM-PEREZ were indicted by a grand jury sitting in the Eastern District of Pennsylvania on a litany of charges, including conspiracy to distribute over 500 grams of a substance or mixture containing methamphetamine, felon in possession of a firearm, possession of a firearm in furtherance of drug trafficking, and related charges.

9. Based on my training and experience, I know that cellular telephones are an indispensable tool of the drug trafficking trade. Drug dealers use cellular telephones, including the phone, voicemail, address book, text messaging, e-mail, digital camera, calendars, cellular applications, and similar electronic means, often under fictitious names or names other than their own, in order to communicate with associates, customers, suppliers, and other co-conspirators, to facilitate drug transactions, and to operate their drug trafficking business. I know that drug dealers often list associates, customers, suppliers, and other co-conspirators in address books on their cellular phones, often by nickname or code, to avoid detection by law enforcement and other individuals who would be able to identify them. I know that examining data stored on cellular telephones used by drug dealers can uncover, among other things, evidence that reveals or suggests specific transactions for illegal drugs, the identity of associates, customers, suppliers, and other co-conspirators, storage locations, sources of supply, and the movement of illegal drugs. I know that drug dealers often use multiple cellular phones and often change and/or discard their phones to minimize their chances of being intercepted or otherwise detected by law enforcement.

10. Based on my training and experience, I know that examining data stored on cellular telephones can also uncover, among other things, evidence that reveals or suggests who possessed or used the device.

11. Based on the information above, there is probable cause to believe that GRAY used the TARGET CELLPHONE to communicate with CI, with his co-conspirator GRAHAM-PEREZ, and with other customers as well as GRAY's source of supply for controlled substances and other unknown members of the conspiracy. Considering that CI had discussed

methamphetamine transactions with GRAY in January and April 2019, and the two transactions between CI and GRAHAM-PEREZ, where GRAY accompanied GRAHAM-PEREZ to meet CI, I believe that their meetings were pre-arranging via telephone call or text message. The fact that GRAY was arrested in possession of the TARGET CELLPHONE while also in possession of large quantities of methamphetamine, cocaine, heroin and oxycodone pills, as well as money and two firearms, I submit there is sufficient probable cause for issuance of a warrant with respect to the TARGET CELLPHONE because it contains evidence of drug trafficking and conspiracy to engage in the drug trafficking between GRAY and GRAHAM-PEREZ. In addition, GRAY'S phone may contain other information to include text messages, call logs, photographs, or other data directly related to the drug transactions with CI.

## TECHNICAL TERMS

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Cellular telephone: A cellular telephone (or wireless telephone or mobile telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and

moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

c. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range

of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

e. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

13. Based on my training, experience, and research, I know that the TARGET CELLPHONE listed in Attachment A has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, Internet browse, and/or PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Additionally, a cellular phone may contain call logs, address books, text messages, emails, videos, photographs, or other stored data relevant to this investigation.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

16. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent

with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

17. For the reasons set forth above, I believe there is probable cause to search the TARGET CELLPHONE described in Attachment A for evidence of violations of 21 U.S.C. § 846 and 841(a)(1), 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(c), and related offenses. I believe there is probable cause to conduct a search of the TARGET CELLPHONE consistent with Attachment B which permits a search of all stored data to include, but not limited to contents of the telephone directory, electronic libraries, stored communications including voice mail, voice messages and text messages, contact lists, applications, reference material aiding in the furtherance of criminal activity, photographs, time and date stamps, GPS data, stored internet searches and any other memory feature relating to the offenses outlined in the affidavit of probable cause.

Special Agent Ryan Jones
Federal Bureau of Investigation (FBI)

Sworn to and subscribed
before me this 17 day of December, 2019

HON. THOMAS J. RUETER
United States Magistrate Judge

## **ATTACHMENT A**

The property to be searched is a black and red Verizon wireless iPhone ("TARGET CELLPHONE") currently located with the FBI in Philadelphia, PA.

This warrant authorizes the forensic examination of the TARGET CELLPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

All records on the TARGET CELLPHONE described in Attachment A that relate to drug trafficking and firearms possession in violation of 21 U.S.C. § 846 and 841(a)(1), 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(c), and related offenses, involving LEROY GRAY, including information pertaining to the following matters:

(a) The distribution of illegal drugs;

(b) The types, amounts, and prices of illegal drugs distributed as well as dates, places, and amounts of specific transactions;

(c) The identity of the persons who sent to and/or received communications from the cellular telephone about matters relating to the distribution of illegal drugs, including records that help reveal their whereabouts;

(d) The storage ("stash") locations of illegal drugs;

(e) The sources of supply for the illegal drugs and the list of customers, including names, addresses, phone numbers, and any other identifying information;

(f) The transporting or movement of illegal drugs, including information related to the methods of trafficking and travel schedules;

(g) Evidence indicating how and when the cellular telephone was used to determine the chronological context of cellular telephone use, account access, and events relating to distribution of illegal drugs;

(h) Evidence indicating the geographic location of the cellular telephone at times relevant to the investigation;

(i) Evidence of user attribution showing who used or owned the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such

as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

(j) Contents of telephone directories; electronic libraries; stored communications including voice mail, voice messages and text messages, contact lists, applications, reference material aiding in the furtherance of criminal activity; photographs; time and date stamps; Global Positioning System (GPS) data; stored internet searches;

(k) Any information recording GRAY'S schedule or travel in 2019; and

(l) Any other memory feature relating to the offenses outlined in the affidavit of probable cause.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

12